UNITED STATES DISTRICT COURT       O
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| SONIA SANCHEZ, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 5-09-cv-129 |
| § | |
| LAREDO INDEPENDENT SCHOOL § | |
| DISTRICT, § | |
| § | |
| Defendant. § | |

## ORDER GRANTING LAREDO INDEPENDENT SCHOOL DISTRICT'S MOTIONS FOR SUMMARY JUDGMENT

Pending before the Court are Laredo Independent School District's ("LISD") motions for summary judgment.[1] After considering the motions, record and controlling authorities, the Court **GRANTS** the motions.

### I.    BACKGROUND

Dr. Sonia Sanchez ("Sanchez") was a long-time Laredo educator who became a principal on July 1, 2003.[2] The documentation is unclear but Sanchez' employment with LISD ended sometime on or between June 3, 2008 and August 30, 2008.[3] Sanchez filed a lawsuit in state court on October 26, 2009.[4] Sanchez alleged that she was discriminated against based on her sex, and that LISD unlawfully retaliated against her.[5] Sanchez identified the nature of her action as an action under Chapter 21 of the Texas Labor Code. However, within the factual recitation, Sanchez also asserted a violation of Title VII of the Civil Rights Act of 1964. Accordingly,

---

[1] Dkt. Nos. 31 & 32.
[2] Dkt. No. 31 Attach. 3 at pp. 35-37.
[3] The Court notes that there seems to confusion among the parties when Sanchez' employment ended. Defendant's motions for summary judgment indicate June 3, 2008. *See* Dkt. No. 31 at p. 7 & Dkt. No. 32 at p. 5. However, much of the evidence indicates that August 30, 2008, was the date her employment ended. Dkt. No. 1 Attach. 1 at ¶ 9 & Dkt. No. 31 Attach. 10 at p. 11.
[4] Dkt. No. 1 Attach. 1.
[5] *Id.* at ¶¶ 10-16.

LISD removed this case to the Southern District of Texas on November 25, 2009.[6]

LISD filed two motions for summary judgment on October 12, 2010.[7] Sanchez failed to timely respond.[8] As this Court has determined that Sanchez asserted claims under both state and federal law, both are addressed in this opinion.

## II. DISCUSSION

### A. Standard Governing Summary Judgment

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[9] The initial burden, borne by the moving party, requires a showing to the Court of the basis for the motion, as well as an identification of the portions of the record "which [the moving party] believes demonstrate the absence of a genuine issue of material fact."[10] "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."[11] "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."[12] Therefore, the Court is concerned with the materiality and genuineness of the fact issues.

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. . . . [A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict

---

[6] Dkt. No. 1.
[7] Dkt. Nos. 31 & 32.
[8] Dkt. Nos. 33, 34, 35 & 38.
[9] FED. R. CIV. P. 56(c)(2) (The Court acknowledges the recent changes to the Federal Rules of Civil Procedure. The Court will rely on the rules as they existed on the date the motions for summary judgment were filed.).
[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[11] *Id.* at 325.
[12] *Matsushita Electric Industrial Co. Ltd., v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).

for the nonmoving party."[13]

As the Court considers the facts and evidence, they must be taken in the light most favorable to the non-moving party.[14] "[T]he judge must view the evidence presented through the prism of the substantive evidentiary burden."[15] Finally, a motion for summary judgment may not be granted simply as a result of the non-movant's failure to respond. Rather, even when the non-movant fails to respond, a motion for summary judgment may only be granted if the movant establishes that he is entitled to judgment as a matter of law.[16]

### B. Statute of Limitations

In LISD's state court answer, it asserted a statute of limitations affirmative defense to Sanchez' state law claims.[17] In its motion for summary judgment, LISD again asserts the limitations defense.[18] The Texas Labor Code provides the time limits for filing a lawsuit. Specifically, the Labor Code states "[w]ithin 60 days after the date a notice of the right to file a civil action is received, the complainant may bring a civil action against the respondent."[19] LISD presents evidence that Sanchez received notice of her right to sue from the Texas Workforce Commission on July 7, 2009.[20] Sanchez originally filed this action in state court on October 26, 2009[21]—well outside the 60-day window to file a civil action. This evidence is undisputed. Therefore, the Court grants LISD's motion for summary judgment on Sanchez state law discrimination and retaliation claims.

---

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 247, 248 (1986).
[14] *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).
[15] *Anderson*, 477 U.S. at 254.
[16] *See Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).
[17] Dkt. No. 1 Attach. 4 at ¶ 8.
[18] Dkt. No. 32 at pp. 23-26.
[19] Tex. Lab. Code Ann. § 21.254 (West 2006).
[20] Dkt. No. 31 Attach. 5; Dkt. No. 31 Attach. 10 at pp. 8-9.
[21] Dkt. No. 1 Attach. 1.

### C. Sex Discrimination

Sanchez has alleged that she was discriminated against based on her sex in violation of Title VII. Federal law prohibits employers from discriminating based on sex.

> It shall be an unlawful employment practice for an employer—
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.[22]

The Fifth Circuit has explained the applicable Title VII analysis.

> Our holding today that the mixed-motives analysis used in Title VII cases post-*Desert Palace* . . . represents a merging of the *McDonnell Douglas* and *Price Waterhouse* approaches. Under this integrated approach, called, for simplicity, the modified *McDonnell Douglas* approach: the plaintiff must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate [or disparately treat] the plaintiff; and, if the defendant meets its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative).'"[23]

#### 1. Whether Sanchez has a *prima facie* case of sex discrimination

To establish a *prima facie* case of sex discrimination Sanchez must "provid[e] evidence 'that she: (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class,'

---

[22] 42 U.S.C. § 2000e-2(a).
[23] *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (internal citations omitted).

or, in the case of disparate treatment, shows 'that others similarly situated were treated more favorably.'"[24]

Here, there is no doubt that Sanchez is a woman, a member of a protected class. Furthermore, LISD has not challenged Sanchez' qualifications for her position. LISD only challenges the third and fourth prongs.[25]

### a. Disparate Treatment

Sanchez' first claim relates to the disparity in pay between her and a male principal who was employed by LISD at the same time.[26] As part of her prima facie case, Sanchez must demonstrate that she was similarly situated to the male principal. "Similarly situated" is a term of art, and requires "that the employment actions at issue were taken 'under nearly identical circumstances.'"[27] The summary judgment evidence before the Court demonstrates that Sanchez was not similarly situated to Martinez, the male principal.[28] Simply stated, Martinez had 14 years of administrative experience as compared to Sanchez' 12 years. This distinction is further supported by the fact that the highest paid principal, a female, had 22 years of administrative experience. Therefore, her claim related to the pay disparity fails as a matter of law. Summary judgment is granted on the disparate treatment discrimination claim related to the pay disparity between Sanchez and Martinez.

As to LISD's reassignment of Sanchez,[29] the evidence cited by LISD does not demonstrate that this was not an adverse employment action. LISD has presented no evidence as

---

[24] *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512-513 (5th Cir. 2001) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)).
[25] Dkt. No. 32 at p. 10.
[26] Dkt. No. 1 Attach. 1 at ¶ 10-14; Dkt. No. 31 Attach. 9 at p. 2; Dkt. No. 32 Attach. 3 at pp. 5-7.
[27] *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (citing *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)).
[28] Dkt. No. 31, Attach. 9, at p. 2.
[29] The evidence before the Court indicates that while Sanchez was initially advised that she was to be reassigned, she was thereafter suspended. *See* Dkt. No. 32 Attach. 3 at p. 81; Dkt. No. 31 Attach. 6 at p. 5 (indicating suspension); *but see* Dkt. No. 31 Attach. 7 at p. 2 (indicating reassignment).

to the terms or conditions of the reassignment. Sanchez' statement that a reassignment would be appropriate[30] does not eliminate the possibility that it was, nonetheless, an adverse employment action. Thus, a genuine issue of material fact remains on whether the reassignment was an adverse employment action. But Sanchez fails once again on the fourth prong because she has not demonstrated that a similarly situated person (i.e. one facing Texas Education Agency, or similar, investigation) outside her class was treated differently when she was reassigned. Thus Sanchez' disparate treatment discrimination claim relating to her reassignment fails as a matter of law.

### b. Constructive Discharge

Sanchez' discrimination claim also arises out of her alleged constructive discharge.[31] A constructive discharge satisfies the third *prima facie* element, an adverse employment action;[32] and Sanchez was replaced by a man who is outside her protected class satisfying the fourth prong.[33] Therefore, if Sanchez shows that she was constructively discharged, she has demonstrated a *prima facie* case of sex discrimination by termination.

> A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign. Courts consider a variety of factors, including the following: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer was accepted or not. The test is objective. The question is not whether [the employee] felt compelled to resign, but whether a reasonable employee in her situation would have felt so compelled.[34]

---

[30] Dkt. No. 32 at pp. 11-13; Dkt. No. 31, Attach. 4, at 57-58.
[31] Dkt. No. 1 Attach. 1 at ¶ 15.
[32] *See Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997); *Thomas v. Atmos Energy Corp.*, 223 Fed. Appx. 369, 375-376 (5th Cir. 2007).
[33] Dkt. No. 31 Attach. 4 at p. 17.
[34] *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 771-772 (5th Cir. 2001) (internal citations omitted).

LISD argues that it did not constructively discharge Lopez.[35] LISD has presented evidence that it had a contractual right to reassign Sanchez,[36] and it is undisputed that LISD intended to reassign Sanchez. The dispute arises thereafter. Sanchez claims that she was forced to retire, LISD contends Sanchez chose to retire rather than accept reassignment. However, the reassignment did not materialize as Sanchez did retire. As Sanchez has presented no evidence regarding the working conditions related to the reassignment, she has failed to establish a prima facie case that the reassignment constituted a constructive discharge. Similarly, Sanchez has failed to present any evidence that the retirement, even if taken at LISD's insistence, made her worse off. In fact, the evidence is to the contrary as Sanchez apparently believed that retirement would stop the Texas Education Agency's ("TEA") investigation. While there is also evidence that the retirement was further conditioned on withdrawal of the initial grievance, the Court finds this is insufficient to meet Sanchez' burden of establishing that retirement would make her worse off. Just as Sanchez did not know the outcome of the TEA investigation at that time, she did not know the outcome of her grievance. Yet, the summary judgment evidence, in particular, Sanchez' deposition testimony, makes it clear that she believed retirement would place her in a better position as it would stop the TEA investigation.[37] Thus, Sanchez has failed to present any evidence that reassignment or retirement constituted a constructive discharge.

### 2.     Whether LISD produced a legitimate, nondiscriminatory reason for its actions

Even if Sanchez is able to demonstrate a *prima facie* case of discrimination by relying on a theory of constructive discharge. LISD has produced evidence of non-discriminatory reasons

---

[35] Dkt. No. 32 at p. 13.
[36] Dkt. No. 32 Attach. 3 at 21-23.
[37] Dkt. No. 31 Attach. 4 at pp. 33 & 35.

for its actions.[38] Specifically, Sanchez was accused of serious irregularities surrounding student admissions and testing.[39] Although the relevance of the Texas Education Agency's ultimate revocation is severely limited because it was unavailable to either side at the time the events in question occurred, it does indicate that LISD had legitimate concerns about Sanchez.[40] In light of the accusations, it appears that LISD had a legitimate non-discriminatory reason for its actions.

### 3. Whether LISD's proffered reason was pretextual or an improper mixed motive

Unless Sanchez presents evidence that raises a genuine issue of material fact on whether LISD's proffered reason for its alleged constructive discharge of Sanchez was pretextual or that the reason was part of an improper mixed motive, LISD will prevail. After reviewing the summary judgment record, the Court finds that Sanchez has failed to demonstrate facts indicating that LISD's actions were pretextual. Furthermore, Sanchez has not demonstrated that there was an improper mixed motive. Therefore, the Court grants summary judgment on the discriminatory termination claim.

### D. Retaliation

Sanchez also alleges that she was retaliated against for filing a grievance complaining that her pay was less than that of the other high school principals at LISD.[41] Federal law provides that

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any

---

[38] Dkt. No. 31 Attach. 6 & 7.
[39] *Id.*
[40] Dkt. No. 32 Attach. 2.
[41] Dkt. No. 1 Attach 1 at ¶ 16.

member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.[42]

"To establish a prima facie case of retaliation, the plaintiff must establish that: (1) [she] participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action."[43]

Beginning with the first prong, Sanchez' *prima facie* case is deficient. There are two categories of actions an employee may take under the federal statute that trigger retaliation protection. The two categories arise from the text of the statute. They are (1) the participation clause and (2) the opposition clause.[44]

Although Sanchez filed a grievance while she was still working with LISD,[45] it was not a formal EEOC charge that could trigger the "participation clause."[46] On the other hand, the "opposition clause" protects a broader range of actions, and Sanchez' grievance must be analyzed under the opposition clause. "To satisfy the 'opposition clause,' [Sanchez] need not prove that [LISD]'s practices were actually unlawful, but only that [she] had 'a reasonable belief that [LISD] was engaged in unlawful employment practices.'"[47] The Court has reviewed the records of Sanchez' grievance procedure with LISD and finds that she did not complain of conduct that was illegal under Title VII.[48] In fact, the form completed by Sanchez specifically asked, "Are

---

[42] 42 U.S.C. § 2000e-3(a).
[43] *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).
[44] *See* 42 U.S.C. § 2000e-3(a).
[45] Dkt. No. 31 Attach. 10 at pp. 31-94.
[46] *Aguilar v. Arthritis Osteoporosis Center*, No. M-03-243, 2006 WL 2478476 at *6 (S.D. Tex. Aug. 25, 2006) ("Cases decided by the Fifth Circuit also reflect that the participation clause does not apply in the absence of a formal charge filed with the EEOC.").
[47] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (citing *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981).
[48] Dkt. No. 31 Attach. 10 at pp. 31-94.

you alleging illegal discrimination?"[49] Sanchez did not allege, or even hint at, sex discrimination. In her deposition, Sanchez admitted she did not complain about gender discrimination in her grievance.[50] Furthermore, the Court finds that Sanchez did not reasonably believe that she was complaining of conduct prohibited under Title VII. Because there is no evidence before the Court indicating that, prior to her termination, Sanchez engaged in behavior protected under Title VII, her retaliation claim fails as a matter of law. Therefore, the Court grants summary judgment on the retaliation claim.

## III. CONCLUSION

For the reasons stated above, the Court **GRANTS** LISD's motions for summary judgment. Plaintiff's claims, pursuant to state and federal law, are dismissed with prejudice. Judgment is hereby granted in favor of Defendant and against Plaintiff. A final judgment will issue under separate cover.

IT IS SO ORDERED

DONE this 15th day of December, 2010, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

---

[49] Dkt. No. 32 Attach. 3 at p. 7.
[50] Dkt. No. 31 Attach. 4 at pp. 15-17.